IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT KEGEL, individually and as
next friend and legal guardian for his son,
ERIC KEGEL, a minor child,**

    **Plaintiff,**

**vs.**                                                                **Civ. No. 00-1806 JP/RLP (ACE)**

**THE SANTA FE PUBLIC SCHOOLS
and THE DEPARTMENT OF PUBLIC
INSTRUCTION FOR THE STATE OF
NEW MEXICO,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On January 22, 2001, Defendant Santa Fe Public Schools ("the District") filed a motion to dismiss (Doc. No. 7) under Federal Rule of Civil Procedure 12(b)(6). That motion will be granted.

**I.    Background**

Plaintiff's son Eric is a non-verbal quadraplegic sixteen-year-old disabled since birth. Eric attended school in the District, although it is unclear exactly when.[1] Plaintiff sues Defendants for events arising during the course of Eric's schooling in Santa Fe. Plaintiff brings causes of action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-706*l*, and under 42 U.S.C. § 1983 for due process and equal protection violations.

---

[1] Eric may have started school in the District in the late 1980's. (Compl. ¶¶ 15A-C.) The District maintains that Eric withdrew from school in Santa Fe during the 1997-98 school year and is now apparently being home-schooled in Ruidoso. (Memo. at 11 n. 4.)

Plaintiff has also framed additional counts for conspiracy, punitive damages, and injunctive relief. The District moves to dismiss all or parts of the complaint against it on the grounds that Plaintiff's claim is barred by the statute of limitations and Plaintiff failed to exhaust his administrative remedies.

## II.     Standard

In considering a motion to dismiss for failure to state a claim, a court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.  Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  A court may dismiss a complaint only if it appears certain that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III.    Discussion

States receiving funding under IDEA are obliged to provide "a free appropriate public education" for disabled children.  20 U.S.C. §§ 1400(d)(1)(a) and 1412(a)(1).  To do this, states are required to create for each disabled student an "individualized education program" ("IEP"). Id. § 1414(d).  Among other things, the IEP sets educational goals for the disabled student and for the school, to be reviewed annually.  Id. §§ 1414(d)(1)(A)(ii) and (d)(4)(A)(i).

Federal funding under IDEA is also conditioned on establishment of administrative remedies or "procedural safeguards" under local law so that parents of disabled children may enforce the right to a free appropriate public education.  20 U.S.C. § 1415(a).  Parents with a complaint about their disabled child's education are entitled to "an impartial due process hearing." Id. § 1415(f).  Either party may appeal the decision resulting from that hearing to "the State

educational agency." Id. § 1415(g). Only after exhausting the right to appeal may a party file suit in court. Id. § 1415(i)(2).[2]

IDEA requires that before seeking relief under the Constitution, the American with Disabilities Act, or the Rehabilitation Act of 1973 for relief also available under IDEA, a plaintiff must comply with IDEA's administrative exhaustion requirements. Id. § 1415(*l*); see also Association for Comm. Living v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993) (dismissing IDEA and section 1983 claims for failure to exhaust IDEA's administrative remedial scheme); Hayes v. Unified School Dist. No. 7, 877 F.2d 809, 811 (10th Cir. 1989) (dismissing section 1983 claim based on constitutional violations for failure to exhaust administrative remedies under IDEA); Frazier v. Fairhaven Sch. Comm., 122 F. Supp. 2d 104, 111-12 (D. Mass. 2000) (dismissing conspiracy claim, the gravamen of which was alleged violation of IDEA, for failure to exhaust administrative remedies).[3]

In his complaint, Plaintiff alleges that from 1987 to the present, Defendants have failed to provide Eric with a free appropriate public education, requiring Plaintiff to provide for Eric's education on his own. (Compl. ¶¶ 12-13.) Plaintiff indicates that during that time he has made "an 'exhaustive' effort . . . to work within the framework of the IDEA to achieve some relief for Eric." (Resp. at 3.) In support of his argument that he has exhausted his administrative remedies, he directs attention to paragraph 15 of his complaint. In paragraphs 15, 16, and 18, Plaintiff

---

[2] New Mexico has promulgated regulations conforming to IDEA and the federal regulations issued under IDEA (34 C.F.R. §§ 300.507 through 300.512) (2000)) at N.M. Admin. Code §§ 5.2.10.7 through 5.2.10.10 (2000).

[3] Plaintiff's remaining two counts, for punitive damages and injunctive relief, are not legal causes of action. These forms of relief would not be available without any of the other five counts, all of which must conform to IDEA's exhaustion of remedies provision.

alleges the following:

❗ In August 1989, after several years of unsuccessful efforts to obtain an IEP for Eric, Plaintiff made a "formal" demand for an IEP.

❗ In November 1989, Plaintiff's attorney sent a demand letter, presumably to the District to force it to formulate an IEP.

❗ In December 1989, Plaintiff and the District entered into a "negotiated settlement," presumably of Plaintiff's demand for an IEP. The settlement contained "a detailed list of services and items to be accomplished and provided."

❗ In May 1993, after several more years of unsuccessful efforts "to obtain cooperative relief," Plaintiff sued in state district court to enjoin the District's Director of Special Education from obstructing the implementation of the settlement reached in 1989. The state court awarded Plaintiff an injunction.

❗ In December 1993, Plaintiff filed an IDEA complaint and requested a due process hearing under IDEA to force the District to comply with the May 1993 injunction.

❗ In February 1994,[4] "a hearing was held . . . at the end of which" the parties reached another settlement agreement, which was stated orally on the record. The terms of that settlement are not disclosed in the complaint or the briefs.

❗ Subsequently, the District violated, in unspecified ways, the settlement agreement reached at the conclusion of the February 1994 hearing. Plaintiff adds that enforcement of the February 1994 settlement agreement was impossible because the District refused to transcribe the

---

[4] Plaintiff only indicates the month in which this first administrative hearing took place and neither party indicates the year. I have assumed from the placement of the allegation in a chronology that the hearing occurred in February of 1994.

tapes of the hearing or to permit Plaintiff to do so by keeping the audio tapes in the District's exclusive control.

! From April through October of 1994, Plaintiff made several attempts, which are not specifically described, to enforce the February 1994 settlement agreement, "culminating in the filing of two Due Process complaints"--one each against the District and the co-Defendant Department of Public Instruction. Both administrative decisions were appealed, apparently by Plaintiff.

! "These efforts culminated in" two reports "strongly" favorable to Plaintiff: one by Peter C. Chestnut dated May 31, 1996, regarding the complaint against the Department of Public Instruction and one by Erin Leff dated March 31, 1997, regarding the complaint against the District. Plaintiff describes Chestnut and Leff as "in the nature of Special Masters." The two reports, which Plaintiff calls "orders," Compl. ¶ 16; see also Resp. at 4, and which the District calls "settlement[s]," Memo. at 11, allegedly contain findings that are binding upon each Defendant. Plaintiff maintains that the corrective plans outlined for Eric's education in the Leff and Chestnut reports have gone almost entirely unfulfilled. Even the first step in the plan for the District outlined in the Leff report--an evaluation for Eric--has never been taken, Plaintiff contends.

Plaintiff purports to sue the District for the entire series of adverse decisions and objectionable actions taken or failures to act with respect to Eric since 1989. However, Plaintiff's complaint against the District can be, if anything, only for the District's alleged failure to comply with the 1997 Leff report. First, Plaintiff has already obtained relief for all of the other allegations he makes: In December 1989, Plaintiff negotiated a settlement for the District's failure to create

5

an IEP.  In February 1994, the parties settled Plaintiff's December 1993 administrative complaint (which was itself filed to force compliance with the 1993 state court injunction, which had been granted to mandate compliance with the December 1989 settlement).  For obvious reasons, Plaintiff cannot now renew objections which he had previously settled, i.e., withdrawn.  The 1994 administrative complaints ultimately resulted in the Chestnut and Leff reports, both of which were favorable to Plaintiff.  A party who prevails is of course not an "aggrieved" party and thus has no right to bring a civil action requesting a result that already has been achieved.  20 U.S.C. § 1415(i)(2)(A).

Second, claims against the District for events predating the Leff report appear to be untimely.  IDEA does not contain a limitations provision, in which instance a federal court must borrow the most closely analogous state statute of limitations.  Industrial Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994) (citation omitted).  Neither the Tenth Circuit nor a federal district court in New Mexico has determined what limitation period applies to IDEA-based claims.[5]  The District proposes that Plaintiff should only be permitted to sue for claims arising during the school year in which the complaint was filed, or alternately, that I should apply a two- or maybe three-year statute of limitations to Plaintiff's complaint.  Plaintiff argues that the proper limitations period is three years.  Assuming without deciding that the Tenth Circuit would apply a three year limitation period to this case--the period most generous to Plaintiff which any party advocates--the allegations for all but Plaintiff's claim concerning the Leff

---

[5] At least one other district court in the circuit has.  L.C. v. Utah State Bd. of Educ., 57 F. Supp. 2d 1214, 1218 (D. Utah 1999) (applying thirty day limitations period), abrogated in other part by Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver, 233 F.3d 1268, 1272 n. 4 (10th Cir. 2000).

report are untimely.  All of the District's conduct to which Plaintiff objects, with the possible exception of failure to implement the Leff report, occurred prior to December 27, 1997, three years before Plaintiff filed his complaint on December 27, 2000.

Moreover, I decline to apply N.M. Stat. Ann. § 37-1-10 to toll the limitations period to reach earlier conduct.  The policy behind IDEA is to encourage "prompt, rather than protracted" resolution of disputes concerning the education of disabled children.  Dell v. Board of Educ., 32 F.3d 1053, 1060 (7th Cir. 1994).  Where a federal court applies a state statute of limitations, it also should apply state tolling provisions unless to do so would be, as here, inconsistent with the policy driving the federal law.  Board of Regents v. Tomanio, 446 U.S. 478, 485 (1980) (citation omitted); see also Strawn v. Missouri St. Bd. of Ed., 210 F.3d 954, 958 (8th Cir. 2000) (declining to apply similar state statute to IDEA claim).  I also find that the continuing violation doctrine does not apply, because its premise--a plaintiff's lack of awareness of the need to assert his rights--is absent from this case.  Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993).  Plaintiff was fully aware of his rights and acted on them to remedy discrete wrongs more than once since 1989.  Cf. Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1990).

What remains against the District then is Plaintiff's claim that the District has failed to implement the Leff report.[6]  The prevailing, and most sensible, view is that post-resolution

---

[6] Even if the balance of Plaintiff's claims were timely they would be barred anyway for failure to exhaust administrative remedies.  Plaintiff has either settled those other claims before filing an administrative complaint (December 1989) or after (February 1994).  Even if he could further pursue a claim which he has settled, Congress has quite clearly indicated that his avenue is to first file administratively, then make an administrative appeal.  20 U.S.C. §§ 1415(f) and (g).  In the two instances in which Plaintiff did appeal administratively (both sometime between April 1994 and May 1996), he obtained a favorable result.  (Compl. ¶¶ 15g through 16.)  Again, a party who prevails is not an "aggrieved" party and thus has no right to bring a civil action.  20 U.S.C. § 1415(i)(2)(A).

enforcement claims must comply with IDEA's administrative process.  Tyson v. Kanawha County Bd. of Ed., 22 F. Supp. 2d 535, 537 (S.D.W.V. 1997) ("The issue of whether a breach existed of any settlement between the parties [to IDEA administrative complaint] is itself an entire new issue to be complained of and put through the proper administrative process."); W.L.G. v. Houston County Bd. of Ed., 975 F. Supp. 1317, 1328-29 (M.D. Ala. 1997) (same); see also Porter ex rel. Porter v. Board of Trustees, 123 F. Supp. 2d 1187, 1196 (C.D. Cal. 2000) (finding that plaintiffs must first use administrative remedies provided by state law to enforce administrative ruling under IDEA); Norris by Norris v. Board of Educ., 797 F. Supp. 1452, 1468 (S.D. Ind. 1992) (same). Cf. Hayes Through Hayes v. Unified School Dist. No. 377, 877 F.2d 809, 813 (10th Cir. 1989) ("Because the . . . measures complained of here are within the purview of the [predecessor to IDEA], the plaintiffs are required to present their complaints concerning such [measures] according to the procedures set forth by the Act."); but see Jeremy H. v. Mt. Lebanon Sch. Dist., 95 F.3d 272, 282-84 (3d. Cir. 1996) (finding that state IDEA-based administrative regulation did not require exhaustion to enforce final decision from IDEA administrative proceeding, but also finding that exhaustion required for new claims).

While the Tenth Circuit has not addressed the proper procedure when an IDEA plaintiff claims the defendant has violated a report by someone "in the nature of" a Special Master resolving the Plaintiff's administrative appeal, I believe that it would require that the plaintiff first resort to a fresh administrative complaint.  In Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 725 (10th Cir. 1996), the plaintiff believed that an administrative complaint attacking a second IEP was unnecessary because he had previously raised the same objections to the first IEP at the administrative level.  The Tenth Circuit held that the district court did not have jurisdiction

because the plaintiff had not exhausted his administrative remedies.  The Tenth Circuit observed that because the plaintiff had not pursued his claim administratively, the district court would have been without an administrative record and would thus have no factual basis for review.  I would be presented with the same lack of a record in this case if Plaintiff's claim that the District has failed to implement the Leff report were to proceed.  As the Tenth Circuit has further observed, the administrative hearing and appellate officers will have an expertise that the district court will not.  Romer, 992 F.2d at 1044.  Certainly that is true in this case as well, and leads me to conclude that Plaintiff must first pursue his claim at the administrative level.

There are instances in which a district court may hear a claim for which no administrative record has been made, i.e., for which administrative remedies have not been exhausted.  Exhaustion of administrative remedies is not required where it would be futile or inadequate, or where the challenge is to a practice or policy that is contrary to law.  Romer, 992 F.2d at 1044.  Exhaustion is also excused where it would work severe, immediate harm on the litigant.  Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1097 (1st Cir. 1989).  None of these are present here.

Plaintiff contends that the course of dealings between him and the District since 1989 demonstrate the futility of seeking a due process hearing before an impartial hearing officer.  That Plaintiff has had to use the administrative hearing process for previous claims, even to enforce previous settlements, does not mean he no longer needs to use that process for this claim.  To the extent Plaintiff contends that the District will not obey an order by an administrative hearing officer or an administrative appellate officer to fulfill the directives in the Leff report, he has not met his burden of persuading the court that is true.  Honig v. Doe, 484 U.S. 305, 327 (1988).

Moreover, an administrative remedy is "generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms" or where plaintiffs assert violations of IDEA's due process provisions.  Romer, 992 F.2d at 1044.  Plaintiff's allegations concerning Eric and the Leff report are not along these lines.

Plaintiff next contends that his grievance concerns policies or practices that are contrary to law, because Defendants acted illegally and purposefully, "making any administrative [proceeding] administered by the Defendants fully suspect."  (Resp. at 4.)  Plaintiff has not persuaded the court than any administrative officer assessing Plaintiff's case cannot act impartially.  Further, this exception applies where the issues are primarily legal, removing the need to build a factual record at the administrative level.  Romer, 992 F.2d at 1044.  The challenges Plaintiff raises concerning failure to implement the Leff report, by contrast, are highly factual.

Finally, Plaintiff asserts that Defendants' continued refusal to provide remedial and compensatory services to Eric has an immediate harmful effect.  However, any harmful effect is not so immediate or severe that Plaintiff should be excused from using the administrative procedures Congress has crafted.[7]

Because the District's arguments with respect to time limitations and a failure to exhaust administrative remedies are dispositive, there is no need to reach the other arguments which the District advances for dismissal.

IT IS THEREFORE ORDERED THAT Defendant Santa Fe Public Schools' motion to

---

[7] I observe again that Eric appears to have been out of the District for several years.  I also note the speed of the administrative process at which a record would be built.  If and when Plaintiff files an administrative complaint, the hearing officer must conduct the hearing and reach a decision within 45 days of the filing of the complaint.  35 C.F.R. § 300.511(a) (2000).  The administrative appeal process takes only 30 days.  Id. § 300.511(b)

dismiss (Doc. No. 7) is granted.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**